UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gregory Adam Engeseth, individually
and on behalf of all others similarly situated,

     Plaintiff,

v.

The County of Isanti, Minnesota
and Sheriff Michael Ammend, individually
and in his capacity as Sheriff of Isanti
County,

     Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 06-2410

_____

     Vincent J. Moccio, Laura M. Provinzino and Katherine S. Wiik, Robins,
Kaplan, Miller & Ciresi L.L.P. for and on behalf of Plaintiff.

     Jon K. Iverson and Pam J.F. Whitmore, Iverson Reuvers for and on behalf
of Defendants.

_____

     This matter is before the Court on Plaintiff's Motions for Class Certification

and for Summary Judgment, and Defendants' Motion for Summary Judgment.

_____

FACTUAL BACKGROUND

     1.  Plaintiff's Arrest

     On or about the evening of September 19, 2002, Plaintiff was pulled over

while driving south on Highway 65 in Isanti County.  Plaintiff Dep. p. 11.  He

was given a field sobriety test, arrested on the charge of gross misdemeanor

driving under the influence, and placed in the back of a squad car.  <u>Id.</u>  Plaintiff

testified that he was scared to go to jail, so while he was sitting in the back of

the squad car, he offered to the officer information regarding "wanted people or

some drug dealers."  <u>Id.</u> p. 14.  The officer told Plaintiff that someone would talk

to him about his information when they got to the jail.  <u>Id.</u>

　　　At the Isanti County Jail, Plaintiff was asked some general background

questions, and asked to empty his pockets.  <u>Id.</u> p. 17.  He was then put into a jail

cell.  <u>Id.</u>  A short time later, an officer entered Plaintiff's cell holding jail clothes,

and told Plaintiff to remove his clothes.  <u>Id.</u>   The officer then looked into

Plaintiff's mouth, behind his ears and made Plaintiff lift his genitals so the officer

could look underneath.  <u>Id.</u> p. 19.  Plaintiff was then asked to bend over and

spread his buttocks and cough.  <u>Id.</u>   After the strip search, Plaintiff was told to

put on the jail clothes.  <u>Id.</u>

　　　A short while later, Plaintiff was brought to a room to speak with an

investigator.  <u>Id.</u> p. 21.  During this interview, Plaintiff told the investigator that

he knew people who did drug deals.  The investigator asked Plaintiff if would

participate in a controlled buy, and the Plaintiff responded that he didn't know.

<u>Id.</u> p. 23.

2.  Isanti County Jail Intake Policies and Procedures - Pre 2003

The Isanti County Jail Intake Policies and Procedures (the "Policy

Manual") in place at the time of Plaintiff's arrest included Booking Procedure

Steps I and II.  Moccio Aff., Ex. A.  Pursuant to Step II (6):

> If it is unknown that a prisoner will be spending more than six hours in
> jail, or is moved from holding cell to the general population of the facility,
> he shall be bathed, searched, and given jail clothing.

Id. p. 4.

The next section of the Policy Manual is entitled "Searches."  This section

provides for the manner in which searches of inmates during the booking

process will be conducted.  Id. p. 5.  Pursuant to section (2), "Prisoners charged

with a gross misdemeanor or Felony and all sentenced prisoners will be given a

strip search during booking."  Id.  Section (3) provides that prisoners charged

with petty misdemeanor, misdemeanor or ordered to jail because of civil

detention will be given a modified strip search - only outer clothing is to be

removed.  Id.  The Policy Manual further provides that:

> any prisoner, regardless of the charge, may be given a full strip search if
> the arresting officer or jailor has a suspicion that the individual prisoner is
> concealing an item of contraband.  If a prisoner who would normally
> receive a modified strip search is given a full strip search, the reason for
> the deviation from normal procedures will be documented and placed in
> the prisoner's file.

Id. p. 6.

3

In his Complaint, Plaintiff alleges that he was subjected to a strip search pursuant to Isanti County policy, custom or practice to strip search any gross misdemeanor arrestees, without probable cause, reasonable belief or individualized reason to believe or suspect Plaintiff was in possession of contraband or weaponry.  Complaint ¶ 21.  As such, the strip search violated the Fourth and Fourteenth Amendment's prohibition against unreasonable searches. Id.  Plaintiff further alleges that Isanti County failed to properly train the jailers regarding the constitutional parameters concerning strip searches, and failed to intercede or alter the strip search policy concerning gross misdemeanor arrestees.  Id. ¶ 24.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).  The party opposing summary judgment may not rest upon

4

mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

ANALYSIS

Before the Court are cross motions for summary judgment.  Plaintiff moves for summary judgment on three grounds: 1) that Plaintiff was strip searched as a matter of law; 2) that Isanti County's strip search of Plaintiff was unconstitutional; and 3) that Isanti County's blanket policy and practice of strip searching all persons arrested on gross misdemeanor charges regardless of whether the offense involved weapons or contraband and Isanti County's blanket policy of strip searching all persons who might be held at the jail for more than six hours are unconstitutional.

Defendants move for summary judgment on the following grounds: 1) Plaintiff failed to provide proper notice under Minn. Stat.  § 466.05(1); (2) Plaintiff was not subject to an unreasonable search; (3) no proof of failure to train; and (4) no proof of damages.

As an initial matter, Plaintiff concedes that the claims asserted against Sheriff Ammend, in his individual capacity, must be dismissed as he did not become sheriff until 2003.  Accordingly, Plaintiff's claims against Sheriff Michael Ammend in his individual capacity will be dismissed with prejudice.

5

1.  Notice

Defendants argue that summary judgment is appropriate as Plaintiff did not follow the procedure mandated by Minnesota Statute of providing notice to the Defendants of his claim for damages.  Minn. Stat. § 466.05 provides that any person claiming damages against a municipality must provide notice within 180 days after the alleged injury of the time, place and circumstances thereof.  No such notice was given in this case.

Minn. Stat. § 466.05 is not applicable to actions brought under § 1983 or the Fourth Amendment.  Rather, the notice requirement applies only to state law claims sounding in tort.  <u>Nadeau v. Ramsey County</u>, 310 Minn. 549, 245 N.W.2d 254, 256 (1976).  <u>See also</u>, <u>Montgomery v. I.S.D. No. 709</u>, 109 F. Supp.2d 1081, 1100 (D. Minn. 2000) (finding the notice requirements in Minn. Stat. §466.05 do not apply to statutory claims of discrimination).

2.  Reasonableness of Search

Plaintiff requests that the Court find, as a matter of law, that Plaintiff was strip searched in this case.  In support, Plaintiff has submitted a jail photo of Plaintiff, dated September 19, 2002, in which he appears to be wearing jail clothes.  For purposes of this motion, Defendants concede that a search took place.

What is disputed is whether the search was reasonable.   "The essential

purpose of the proscriptions of the Fourth Amendment is to impose a standard of

'reasonableness' upon the exercise of discretion by government officials."

Delaware v. Prouse, 440 U.S. 648, 653-54 (1979).   The Constitution does not

prohibit searches on gross misdemeanants *per se*, only unreasonable searches.

Bell v. Wolfish, 441 U.S. 520, 558 (1979).

> The test of reasonableness under the Fourth Amendment is not capable of
> precise definition or mechanical application. In each case it requires a
> balancing of the need for the particular search against the invasion of
> personal rights that the search entails. Courts must consider the scope of
> the particular intrusion, the manner in which it is conducted, the
> justification for initiating it, and the place in which it is conducted.

Id. at 559 (citations omitted).   In the Eighth Circuit, a reasonable suspicion

standard has been applied with respect to strip searches of temporary detainees

charged with minor offenses.   See eg., Jones v. Edwards, 770 F.2d 739 (8th Cir.

1985) (strip search of individual arrested for failing to sign a summons and

complaint arising from a leash law violation was unconstitutional);   John Does

1-100, 612 F. Supp. 1069, 1070 (D. Minn. 1985) (finding suspicion must be

individualized or directed to the person who is targeted for a strip search).   See

also, Hunter v. Auger, 672 F.2d 668, 674 (8th Cir. 1982) (finding strip searches of

a jail visitor are constitutionally permissible if based on a reasonable suspicion

that the visitor will attempt to smuggle in drugs or contraband).

Plaintiff argues that the jailers did not have a reasonable suspicion to conduct a strip search of him.  The nature of the offense for which he was arrested, driving under the influence of alcohol, or his criminal history, no previous drugs or weapons convictions, did not provide a reasonable suspicion to justify a strip search.  Plaintiff further asserts there is no evidence that the Plaintiff's demeanor warranted a strip search.  In fact, the officer observation sheet completed on the night of his arrest shows Plaintiff was cooperative.  Moccio Aff., Ex. P.  Further, a search of Plaintiff's car and his pockets did not provide a reasonable suspicion that Plaintiff was in the possession of drugs or contraband.

Defendants argue that based on the record, the strip search of Plaintiff on September 19, 2002 was not unreasonable.  Plaintiff admitted in his deposition that after his arrest, he offered information to law enforcement concerning "wanted people or drug dealers."   In addition, Plaintiff's passenger the night he was arrested had an outstanding warrant for possession of a controlled substance.  Iverson Aff., Ex. G; Olson Aff., Ex. A.  The arresting officer, Deputy Lance Olson, asserts he does not have a specific recollection of Plaintiff, or the arrest.  Deputy Olson did state, however, that as a matter of course, he would have informed the jailers of Plaintiff's comments concerning his knowledge of drug dealers, and the fact that the passenger had an outstanding drug warrant.

8

Olson Aff., ¶¶ 5 and 6.   Isanti County jailer Grace Mattson testified that

detainees would only be strip searched if such a search was requested by the

arresting officer.  Mattson Dep. p. 18-19, 25.  Other jailers testified that

detainees would be strip searched if there was a concern such detainee had

drugs or contraband.  Ryden Dep. p. 33-34.  Hall Dep. p. 75-76.  The jailers also

testified that strip searches are conducted for security reasons, to prevent

harmful items from entering the jail or the general population.  Hall Aff. ¶¶ 7-10;

Christensen Dep. p. 37

Based on this record, the Court finds there are genuine issues of material

fact as to whether the arresting officer and the jailers had a reasonable suspicion

that the Plaintiff was in possession of drugs or other contraband, and that the

jailers conducted the strip search as a result of such reasonable suspicion.

Accordingly, to the extent that the parties moved for summary judgment on the

issue of whether the strip search was reasonable, such motions are denied.

The Court also finds there is a genuine issue of fact as to whether Isanti

County had a policy, practice or custom of conducting strip searches on

detainees brought in on a gross misdemeanor charge, or those thought to be

held for six hours or more, without a reasonable suspicion that such detainee

possessed drugs, weapons or contraband.  The written policy provided that all

individuals brought in on a gross misdemeanor should be strip searched during

booking or held for more than six hours.  Thus, on its face, the written policy

appears to permit a search without a reasonable suspicion the detainee possesses

drugs, contraband or weapons.  Corrections Officer Ryden admitted that he

followed the pre-2003 policy and conducted strip searches on individuals

charged with gross misdemeanor charges.  Ryden Dep. p. 50-52.

However, other jailers provided testimony that strip searches were done

only at the request of the arresting officer or the sergeant, Mattson Dep. p. 18-

20, 25, or if the charge involved drugs, contraband or weapons or the detainee

would be moved into the general population.  Christensen Dep. p. 28 and 34;

Ryden Dep. p. 26; Hall Dep. 57, 73-76, 79-82, 120.  Accordingly, Plaintiff is not

entitled to summary judgment on his claim that Isanti County had a blanket

policy and practice of strip searching all persons arrested on gross misdemeanor

charges regardless of whether the offense involved weapons or contraband or

that Isanti County had a blanket policy of strip searching all persons who might

be held at the jail for more than six hours.

3.  Failure to Train

In the Complaint, Plaintiff alleges that Isanti County "failed to properly

train its deputy sheriffs regarding the constitutional parameters of strip searches

and failed to intercede or alter the strip search policy, custom and/or practice of

unconstitutionally strip searching all gross misdemeanor arrestees."  Complaint ¶

24.

To recover on a failure to train claim, Plaintiff must demonstrate that the failure to train amounts to deliberate indifference to the rights of the persons whom the jailers came in contact with.  City of Canton, Ohio v. Harris, 489 U.S. 378, 392 (1989); Davidson v. Cannon, 474 U.S. 344 (1986)(negligence by prison officials does not trigger the due process clause of Fourteenth Amendment).  A plaintiff "must establish that the [defendant] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights."  Thelma D v. Board of Educ. of City of St. Louis, 934 F.2d 929, 934 (8th Cir. 1984) (citations omitted).  Notice can be established in one of two ways: where the need to train is patently obvious or if there is a pattern of constitutional violations.  Id.

In this case, there can be no dispute that in general, jailers must be trained with respect to the constitutional parameters of strip searches. Defendants argue they are entitled to summary judgment on this claim as Isanti County had such a training program in place prior to 2003, in which a new jailer would shadow a veteran jailer for a certain amount of time.  Mattson Dep. p. 7-12; Christensen Dep. p. 52-56; Ryden Dep. p. 11.  If changes occurred in any policy, the change was to be communicated to jail supervisors, who would then communicate such changes to jail staff.  Hall Dep. p. 99, 102; Mattson Dep. p. 12; Christensen Dep. p. 42.

11

Defendants further argue that a failure to train claim should go to a jury only where there is proof of persistent, widespread, flagrantly unconstitutional practices. Harris v. Pagedale, 821 F.2d 499 (8th Cir. 1987). Defendants assert that Plaintiff has not submitted any evidence that such a persistent, widespread, flagrantly unconstitutional practice existed at the Isanti County jail.

Plaintiff responds that there are genuine issues of material fact as to whether Isanti County failed to properly train its jailers with respect to strip searches. In support, Plaintiff cites to the deposition testimony of Correction Officer Deloris Beehler, in which she stated that she did not remember what training she received when she began working for Isanti County in 1996. Beehler Dep. p. 7. Correction Officer Ryden acknowledged that people brought into the jail have certain legal rights, but could not remember who instructed him as to constitutional rights, what was written in the policy and whether there were any updates after his training in 1999. Ryden Dep. p. 24-25. Plaintiff also points out that Correction Officer Linda Nelson, who provided training to new jailers, could not identify any laws or regulations concerning constitutional standards involving strip searches. Nelson Dep. p. 33.

The Court agrees that genuine issues of material fact preclude summary judgment with respect to the failure to train claim. While Defendants have presented evidence that it had a training policy in place, there is no evidence

12

currently before the Court as to the substance of such training.

4. No Proof of Damages

Finally, Defendants assert they are entitled to summary judgment as the

Plaintiff has suffered no damages or injuries as a result of the strip search.  The

Court disagrees.

"Assuming liability is found under section 1983, the jury may assess

compensatory damages based upon, inter alia, the physical harm suffered

(including pain and discomfort), the emotional harm suffered (including fear,

humiliation and mental anguish) even though no actual damages are proven,

and the violation of plaintiffs' substantive right to liberty." Bauer v. Norris, 713

F.2d 408, 413 (8th Cir. 1983) (citations omitted).  Plaintiff has alleged that he

has suffered actual damages as a result of the strip search.  He testified that he

lost respect for authority, and that he suffered emotional distress and

humiliation.  Plaintiff Dep. p. 62-64.  At the very least, Plaintiff may be entitled

to nominal damages.  Hunter, 672 F.2d at 677.

STANDARD FOR CLASS CERTIFICATION

Plaintiff moves for class certification, and proposes the following class

definitions:

> All persons arrested for gross misdemeanor offenses unrelated to weapons
> or illegal drugs who, when brought to the Isanti County Jail in
> conjunction with their arrest, were, pursuant to Isanti County policy and
> practice, required by officers of the Isanti County Jail to remove their

clothing for visual inspection of their genitals, pubic area, buttocks, or, in the case of females, breasts, in the absence of any individualized suspicion that they possessed contraband or weaponry, at anytime from May 19, 2000, until the county's policies and practices changed on or about January 1, 2003.

All persons arrested for misdemeanor offenses unrelated to weapons or illegal drugs who, because they spent more than six hours at the Isanti County Jail in conjunction with their arrest, were, pursuant to Isanti County policy and practice, required by officers of the Isanti County Jail to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or, in the case of females, breasts, in the absence of any individualized suspicion that they possessed contraband or weaponry, at anytime from May 19, 2000, until the county's policies and practices changed on or about January 1, 2003.

STANDARD FOR CLASS CERTIFICATION

The class action serves to conserve the resources of the court and the parties by permitting an issue that may affect every class member to be litigated in an economical fashion.  Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 471 (5th Cir. 1986) (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 155 (1979)).  Whether an action should be certified as a class action is governed by Rule 23 of the Federal Rules of Civil Procedure.

A.  Rule 23(a) Prerequisites

Pursuant to Rule 23(a), there are four threshold requirements to class certification:

1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately

14

protect the interests of the class.

A district court should not certify a class until it has been determined, "through rigorous analysis, that all the prerequisites of Rule 23(a) have been satisfied." General Telephone Co., 457 U.S. at 161.  If these prerequisites are met, the Court must then determine if the putative class is maintainable under Rule 23 (b)(1), (2) or (3).  Plaintiffs bear the burden of proof regarding the Rule 23 requirements.  In re Worker's Compensation, 130 F.R.D. 99 (D. Minn. 1990). District courts have broad discretion in determining whether or not to certify a class. Gilbert v. City of Little Rock, Ark., 722 F.2d 1390, 1399 (8th Cir. 1983).

1) Numerosity

With respect to the numerosity prerequisite, Plaintiff asserts the proposed class likely contains hundreds of individuals, based on discovery to date. Defendants have admitted that in 2002 alone, 1,066 individuals were booked into the Isanti County Jail.  It thus appears the numerosity requirement has been established.

2) Commonality

This prerequisite focuses on questions of law and fact common to the class.  It is not necessary that all questions of law and fact are common to the class, rather the commonality requirement is met where, for example, "the question of law linking the class members is substantially related to the

15

resolution of the litigation, even though the individuals are not identically situated." Paxton v. Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir. 1982)(quoting American Finance Sys., Inc. V. Harlow, 65 F.R.D. 94, 107 (D. Md. 1974)).  This prerequisite may also be met when members of the proposed class claim to have been harmed by a general policy of the defendant, and the litigation is focused on said policy.  Mathers v. Northshore Mining Co., 217 F.R.D. 474, 485 (D. Minn. 2003).  In this case, the focus of the litigation is the strip search policies of Isanti County prior to 2003 concerning detainees arrested for  gross misdemeanor offenses, or held for more than six hours, without an individualized suspicion that such detainee possesses drugs or weapons.  The Court thus finds that this prerequisite is met.

　　3.  Typicality

　　Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  This requirement focuses on the similarity of the legal and remedial theories behind the claims. Jenkins, 782 F.2d at 472.  In other words, in determining typicality, the court must consider whether the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.  In re: American Medical Systems, Inc., 75 F.3d 1069, 1082 (6th Cir. 1996).  Although factual differences

may exist amongst the claims, such differences will not preclude class certification when the claims arise from the same course of conduct and gives rise to the same legal or remedial theories.  Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996).

Plaintiff asserts the typicality requirement is met here as well.  Like every class member, Plaintiff raises the same legal theories under the Fourth Amendment and § 1983, and alleges he was subjected to the same unconstitutional strip search policies.

Defendants assert the typicality prerequisite is not met because with respect to Plaintiff, the jailers had a reasonable suspicion justifying the search. This factor must be viewed, however, with reference to the Defendants' actions, not with respect to particularized defenses.  Blihovde v. St. Croix County, 219 F.R.D. 607 (W.D. Wis. 2003) (citation omitted).  And, as indicated above, there are fact questions as to whether the Plaintiff was searched because of a reasonable suspicion he possessed drugs or contraband.  The Court thus finds that the typicality prerequisite is also met.

4) Adequacy of Representation

The final prerequisite requires the Court to make a determination that the named class representatives and counsel[1] will adequately represent the class

_____

[1]There is no challenge to the adequacy of class counsel.

17

members.  In making this determination, the Court must ascertain whether the named representatives' interests are sufficiently similar to those of the class to the extent "that is unlikely that their goals and viewpoints will diverge."  <u>Parkhill v. Minnesota Mutual Life Ins. Co.</u>, 188 F.R.D. 332, 339 (D. Minn. 1999) <u>aff'd</u> 286 F.3d 1051 (8th Cir. 2002).

The Court is satisfied that the class representative named in this case will adequately represent the class.  His claims fall within both class definitions, and there is no reason to believe his interests are antagonistic to the interests of fellow class members.   The Court is also satisfied that class counsel will more than adequately represent the class.

B.  23(b)(3) Requisites

A class may be certified under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

In this case, the Court is satisfied that the requirements of Rule 23(b)(3) are met as well.  Common questions do predominate, as the issue of central importance is shared by the class members, namely the constitutionality of certain aspects of Isanti County's pre-2003 strip search policy.  Given the asserted claims, a class action would also be superior, as it will allow for the avoidance of

18

duplicative actions, and expeditiously resolving common issues is in the best interests of the system and the parties.  In addition, the likely individual recovery is comparatively small, thus a class action provides a forum for class members who would otherwise go without litigating at all due to transaction costs.

In light of the foregoing, the Court will conditionally certify this action as a class action.

IT IS HEREBY ORDERED that:

1) Plaintiff's Motion for Summary Judgment [Doc. No. 27] is GRANTED to the extent that Plaintiff was subjected to a strip search and DENIED in all other respects;

2) Plaintiff's Motion for Class Certification [Doc. No. 24] is conditionally GRANTED;

3) The class is conditionally certified as follows:

All persons arrested for gross misdemeanor offenses unrelated to weapons or illegal drugs who, when brought to the Isanti County Jail in conjunction with their arrest, were, pursuant to Isanti County policy and practice, required by officers of the Isanti County Jail to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or, in the case of females, breasts, in the absence of any individualized suspicion that they possessed contraband or weaponry, at anytime from May 19, 2000, until the county's policies and practices changed on or about January 1, 2003.

All persons arrested for misdemeanor offenses unrelated to weapons or

illegal drugs who, because they spent more than six hours at the Isanti County Jail in conjunction with their arrest, were, pursuant to Isanti County policy and practice, required by officers of the Isanti County Jail to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or, in the case of females, breasts, in the absence of any individualized suspicion that they possessed contraband or weaponry, at anytime from May 19, 2000, until the county's policies and practices changed on or about January 1, 2003.

4) Defendant's Motion for Summary Judgment [Doc. No. 15] is GRANTED as to all claims against Sheriff Michael Ammend in his individual capacity, and DENIED in all other respects.

Date: October 23, 2007

s / Michael J. Davis
Michael J. Davis
United States District Court