UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Gregory Adam Engeseth,
Jayne Ilene Bartholdi, and
Michael David Ferris, individually,    Civil No. 06-2410 (MJD/RLE)
and on behalf of all others similarly
situated,

          Plaintiffs,

vs.

The County of Isanti, Minnesota,

          Defendant.

---

## JOINT PETITION OF PLAINTIFFS AND DEFENDANT FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AGREEMENT

---

Gregory Adam Engeseth, Jayne Ilene Bartholdi, and Michael David Ferris, for themselves and on behalf of all others similarly situated, acting by and through their undersigned counsel, Vincent J. Moccio of Robins, Kaplan, Miller & Ciresi L.L.P. ("Plaintiffs' Counsel"), and Defendant Isanti County, Minnesota, jointly petition the Court for Preliminary Approval of the Proposed Settlement Agreement between the Class and Defendant. The Proposed Settlement Agreement is attached hereto as Exhibit A and will be executed if this Court gives final approval to this settlement.

## I.   INTRODUCTION.

The Proposed Settlement Agreement would resolve Defendant's liability to the Class. On October 23, 2007, this Court conditionally certified the Class as:

> All persons arrested for gross misdemeanor offenses unrelated to weapons or illegal drugs who, when brought to the Isanti County Jail in conjunction with their arrest, were, pursuant to Isanti County policy and practice, required by officers of the Isanti County Jail to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or, in the case of females, breasts, in the absence of any individualized suspicion that they possessed contraband or weaponry, at anytime from May 19, 2000, until the county's policies and practices changed on or about January 1, 2003.

AND

> All persons arrested for misdemeanor offenses unrelated to weapons or illegal drugs who, because they spent more than six hours at the Isanti County Jail in conjunction with their arrest, were, pursuant to Isanti County policy and practice, required by officers of the Isanti County Jail to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or, in the case of females, breasts, in the absence of any individualized suspicion that they possessed contraband or weaponry, at anytime from May 19, 2000, until the county's policies and practices changed on or about January 1, 2003.

As more fully described below, the Court is requested at this time to grant preliminary approval of the proposed settlement. The Court is also asked to approve the Notice to be sent to prospective Class Members, to schedule a final fairness hearing and to order that all potential Class Members be notified of the proposed settlement and provided with an opportunity to comment on or object to the proposed settlement.

This Petition will discuss the applicable substantive law, the standards and procedure for preliminary approval, and the reasons why the approval of the Proposed Settlement Agreement is a preferable alternative to the inherent expense, delay and uncertainty of continued litigation and trial.

## II.   FACTUAL AND PROCEDURAL BACKGROUND.

The Named Plaintiff Gregory Engeseth brought this cause of action as a putative class action against the Defendant, alleging that he was illegally strip searched at the Isanti County Jail and seeking damages under 42 U.S.C. § 1983 for violation of his rights secured by the Fourth and Fourteenth Amendments of the Constitution of the United States ("the Subject Lawsuit"). The Complaint was served upon Defendant on May 19, 2006. This Court conditionally certified the class on October 23, 2007, as defined above. The Complaint was amended on May 29, 2008, and Jayne Ilene Bartholdi and Michael David Ferris were added as Named Plaintiffs.

The Named Plaintiffs, individually, and on behalf of the Class, and the Defendant desire to settle the Subject Lawsuit to avoid the uncertainties and risks of trial, to avoid further expenses, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the covenants, releases, orders and judgments contemplated by this Settlement Agreement so as to settle and put to rest totally and finally the matters raised by the Subject Lawsuit.

Plaintiffs' Counsel has conducted substantial investigations and negotiations and, considering the benefits of the settlement and the risks of litigation, has concluded that it is in the best interest of the Named Plaintiffs and the Class to enter into the Settlement Agreement. The Named Plaintiffs and Plaintiffs' Counsel agree that this settlement is fair, reasonable and adequate with respect to the interests of the Named Plaintiffs and the Class, and should be approved by this Court pursuant to Federal Rule of Civil Procedure 23(e).

## III.   SETTLEMENT APPROVAL PROCEDURE.

No action brought as a class action may be settled, compromised or dismissed without court approval. Fed. R. Civ. P. 23(e). Judicial experience with Federal Rule of Civil Procedure 23, has led to an exacting procedure and specific criteria for class action settlement approval.

This experience is embodied in the procedure and criteria suggested in the Manual for Complex Litigation 3d (1995) § 30.41 ("MFCL"), and is comprised of two distinct steps:

1. Preliminary approval of the proposed settlement at an informal hearing; and

2. Dissemination of notice to all affected class members of a formal "fairness hearing" at which class members may be heard regarding the settlement and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement is presented.

This procedure is commonly utilized by the federal district courts. *See e.g., Sanders v. Ashland, Inc.,* No. 4-96-721, 2000 U.S. Dist. LEXIS 14623, at *3 (D. Minn. April 10,2000) (describing process of preliminary approval followed by notice to class members) (unpublished opinion attached hereto as Exhibit B).  It is the method endorsed by the oft-quoted leading class actions treatise, Newberg on Class Actions ("Newberg"). 2 Newberg, § 11.22, et seq.  By adopting this procedure, the Court will assure Class Members of the protection of procedural due process and fulfill the Court's role as the guardian of class interests.

This Petition requests that the Court:

1. Grant preliminary approval to the Settlement Agreement;

2. Approve the proposed forms of Notice of the proposed settlement to be mailed;

3. Adopt the proposed deadlines set forth below, or other similar deadlines; and

4. Schedule the Formal Fairness Hearing for a date and time certain so that that date

and time can be included in the Notice.

*See* 2 Newberg, § 11.26.

## IV. THE PROPOSED SETTLEMENT FULFILLS THE PRELIMINARY APPROVAL CRITERIA.

It has been repeatedly recognized that settlements are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits. *See e.g., First Wisconsin Nat'l Bank v. Klapmeier,* 526 F.2d 77, 81 (8th Cir. 1975) ("[t]he policy of the law has always been to promote and sustain the compromise and settlement of claims."). This rule has particular force in a class action. *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1405 (D. Minn. 1987) (describing policy favoring settlements in Title VII class actions). Thus, in considering a proposed class settlement, courts generally view facts in a light favorable to settlement. *Spencer v. Comserv Corp.*, Nos. 4-84-794, 4-84-882 and 4-85-283, 1986 U.S. Dist. LEXIS 15863, at * 16 (D. Minn. Dec. 30, 1986) (unpublished opinion attached hereto as Exhibit C).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. MFCL, § 30.41.

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under rule [Fed. R. Civ. P.] 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.* The purpose of the preliminary evaluation is to determine only whether the proposed settlement is within the range of possible approval and whether notice to the Class of its terms and conditions and the scheduling of a final approval hearing will be worthwhile. *See Liebman v. J. W. Petersen Coal & Oil Co.*, 73 F.R.D. 531, 534-35 (N.D. Ill. 1973); 2 Newberg, § 11.25.

Here, the proposed Settlement Agreement is worthy of preliminary approval. It is the product of extensive settlement discussions and negotiations between counsel. Its approval will spare the parties the expense, delay and uncertainty inherent in a trial and subsequent appeal. *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971); 2 Newberg, § 11.40-11.47, 11.50. It is a fair settlement of the Class Member's uncertain claims.

## V.     NATURE AND METHODS OF SETTLEMENT NOTICE.

### A.     Methods of Settlement Notice.

Defendant has provided to Class Counsel the names, addresses, booking dates and charges of all persons booked into the Isanti County Jail between May 19, 2000, and January 1, 2003, for those with misdemeanor charges or for those who were held at the Jail for at least six hours. Since the Defendant is unsure whether certain detainees were strip searched, those detainees, who otherwise qualify, will be mailed the Notice, <u>but will be required to attest to the fact that they were strip searched in order to remain in the Class</u>. (*See* Exhibit D, pp. 9-10).

Class Members have already been notified of the conditional certification of the class by direct mail. When this Court certified the class, the Notice providing information required by Fed. R. Civ. P. 23(c)(2) was approved by this Court, and the Notice was mailed to Class Members. Class Counsel has received 119 requests for exclusion from the class, the list of which is attached as Exhibit E.

All Class Members who can be located and who have not already opted-out ("Located Class Members") will now be notified of the proposed settlement. The Notice will include the attestation Claims Form which must be returned for inclusion in the Class and which states the number of qualifying strip searches for which the Class Member may claim compensation and instruction on how to make a claim for compensation (Exhibit D, pp. 9-10), as well as an

exclusion form to give Class Members another opportunity to opt-out of the Class, pursuant to Fed. R. Civ. P. 23(e)(4) (Exhibit D, p. 11). The Notice and forms will be sent to Located Class Members by first-class mail, postage prepaid.

Class Counsel previously retained an outside service to check the validity of all addresses provided by the County for the class certification notices. Once again, Class Counsel will retain an outside service to verify these addresses. Direct mailing of the Individually Mailed Notice (attached as Exhibit D) will be made to all addresses previously mailed to for the class certification notice, including any address provided to Class Counsel by Defendant that was not ruled out as a possible residence of the Class Member by the outside service, as well as any new address that the outside service locates for the Class Members.[1] If returned as undeliverable, and a forwarding or other good address is indicated on the returned envelope, the Notice will be re-mailed to the address indicated on the envelope. If returned with no forwarding or new address information, Class Counsel will use the outside service to attempt to locate the individual. Persons who cannot be located in this manner will be considered unlocatable unless they contact Class Counsel as a result of word of mouth or press coverage of the settlement.

### B. Legal Requirements of the Notice.

The Proposed Notice of the proposed settlement will be mailed to the Class Member's last known address. In class action lawsuits, notice by mail to a class member's last known address satisfies the due process requirement. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114,

---

[1] For each individual Class Member, the mailing will be made to all addresses found in the booking information provided to Class Counsel that cannot be ruled out as a possible residence by the outside service. These will be addresses found in the booking information for the class period. In other words, if the Class Member has more than one address listed in the provided booking information, a mailing will be sent to each address. However, if that same individual was booked after the class period, that address will not be used since it will not be known to Plaintiffs' Counsel because information from booking sheets for dates after the end of the class period will not be produced by Defendant.

MP2 15394841.1

121 (8th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974)).  As recommended by 3 Newberg, § 8.21, 8.39 and the MFCL, § 30.211, 30.212, the Notice describes the terms and conditions of the settlement, the background of the litigation, the claims asserted, the nature of the release, the nature of the class action, the identity of class counsel and the rights and responsibilities of Class Members.  It informs the Class Members of the attorneys' fees requested and preliminarily approved.  It likewise details the final settlement approval procedure and includes the date, time and place of the final approval hearing.  It provides a procedure for Class Members to comment in support of or in opposition to the settlement agreement and provides another opportunity for Class Members to opt out of the Class, pursuant to Fed. R. Civ. P. 23(e)(4).  Finally, it notifies Class Members of their opportunity to be heard at the final hearing.

The Notice fulfills the requirement of neutrality in class notices, 3 Newberg, § 8.39, and it attempts to summarize the proceedings to date and the terms and conditions of settlement in an informative and coherent manner.  MFCL, § 30.211.  It makes it clear that the settlement does not constitute an admission of liability by Isanti County and emphasizes that the Court has not yet ruled, one way or another, on the substantive merits of the action.  It also states that the final settlement approval decision has yet to be made.  Accordingly, the Notice complies with the standards of fairness, completeness and neutrality required of a settlement class notice disseminated under authority of the court.  3 Newberg, § 8.21, 8.39; MFCL, § 30.211, 30.212.

## VI.     TERMS AND CONDITIONS OF THE SETTLEMENT.

### A.     Amounts To Be Paid.

The Settlement Agreement is self-explanatory.  As a compromise settlement of this Subject Lawsuit, and in exchange for the releases and covenants described in the Settlement Agreement, Defendant agrees to pay a total of Seven Hundred and Seventy-Five Thousand Dollars ($775,000), which will paid as follows:

1. Twenty-Five Thousand Dollars ($25,000.00) to named plaintiff Gregory Adam Engeseth;

2. Twenty Thousand Dollars ($20,000.00) to named plaintiff Jayne Ilene Bartholdi;

3. Twenty Thousand Dollars ($20,000.00) to named plaintiff Michael David Ferris;

4. Four Hundred Thirty Thousand Dollars ($430,000) to be divided, as described below in Section B.5, among all Class Members who have not opted-out and who come forward and make a claim for compensation; and

3. Two Hundred Eighty Thousand Dollars ($280,000) to Class Counsel as combined fees <u>and</u> costs.  From this amount Class Counsel will pay all of the plaintiffs' and class' costs, including the costs incurred in preparing and sending Notice of this settlement to all potential Class Members who have not already opted-out of the Class, the costs incurred in preparing, sending, and processing Claim Forms, the costs incurred in providing staff to answer inquiries from class members and

interested parties and the costs of disbursing the settlement proceeds to all persons making a claim. The lump sum set aside for attorneys' fees and costs is the total amount that will be paid by Defendant for all attorneys' fees and costs in connection with the Subject Lawsuit and this Settlement, regardless of whether any Class Member or other person engages separate or additional legal counsel or incurs separate or additional attorneys' fees or costs.

**B.     Methodology Used to Compensate the Class.**

The Parties propose that after final approval of the settlement by the Court, the following method be used to compensate Class Members:

1. Those Located Class Members who are notified of the settlement pursuant to Section V-A, who do not opt-out of the Class and who return their fully executed Claim Forms before the deadline for returning Claim Forms, will constitute the "Final Class Members." Only Final Class Members will be eligible for compensation.

2. Compensation will be made to Final Class Members primarily on the basis of how many Final Class Members there are, i.e., on the basis of compensation for the first, or only, illegal strip search they were subjected to. Final Class Members that were illegally strip searched more than once will also receive an additional compensation bonus for each additional illegal strip search to which they were subjected.

3.  Final Class Member Compensation will be determined as follows:

    a.  Four Hundred Ten Thousand Dollars ($410,000) of the Four Hundred Thirty Thousand Dollars ($430,000) will be designated as the "primary fund" and will be available for Class Member compensation. The "primary fund" will be divided equally among all Final Class Members as compensation for their first (and perhaps, only) strip search, provided, however, that no class member will receive more than Twenty-Five Hundred Dollars ($2,500) from the "primary fund." Upon receipt of all timely returned Claim Forms, the total number of Final Class Members will be calculated. This figure will be divided into Four Hundred Ten Thousand Dollars ($410,000). The resulting dollar figure, or Twenty-Five Hundred Dollars ($2,500), whichever is lower, will be the Base Compensation Figure. No Final Class Member will receive less than the Base Compensation Figure.

    b.  The remaining Twenty Thousand Dollars ($20,000) of the Four Hundred Thirty Thousand Dollars ($430,000) will be designated as the "secondary fund" and will be available for Class Member compensation. The "secondary fund" will be used to provide bonus compensation for Final Class Members who were illegally strip searched more than once, provided, however, that each additional search will be compensated in an amount no

greater than One Thousand Dollars ($1,000). Upon receipt of all timely returned Claim Forms, the total number of additional strip searches for which Claim Forms are submitted will be calculated. This figure will divided into Twenty Thousand Dollars ($20,000). The resulting dollar figure, or One Thousand Dollars ($1,000), whichever is lower, will be the Bonus Compensation Figure that will be paid for each additional strip search claimed by a Final Class Member. This Bonus Compensation Figure will be paid for each eligible strip search beyond the first eligible strip search for which the Final Class Member is making a claim. It will be paid in addition to the Base Compensation Amount.

### C. Cap on Class Damages and Return of Monies to Isanti County.

As described above, compensation from the "primary fund" will be capped at Twenty Five Hundred Dollars ($2,500) per class member, and compensation from the "secondary fund" will be capped at One Thousand Dollars ($1,000) per additional search. Theoretically, this could result in some portion of the Four Hundred and Forty Thousand Dollars ($440,000) not being disbursed. Any such portion will be returned to Isanti County. These funds will be returned no later than seven months after checks are mailed to class members.

### D. Settlement Amounts May Be Taxable.

Because recovery by Class Members may be taxable, Final Class Members who cash their checks will receive a Form 1099. *See* IRS Code; Publication 17, Chapter 12 "Your Federal Income Tax (for Use in Preparing 2008 Returns): Other Income," Department of the Treasury,

Internal Revenue Service, page 90. The Notices mailed to class members will inform them that any proceeds they receive may be taxable.

## VII. TIMELINE AND DEADLINES CONCERNING NOTICE OF THE SETTLEMENT.

The parties recommend that this Court's Order preliminarily approving the settlement set the deadline for Class Members to opt-out of the Class, to return the Claims Form attesting that they were strip searched and are thus a part of the Class, to comment or to object to the settlement at 60 days from the date of mailing of the Individually Mailed Notices.

The parties further recommend that the Final Fairness Hearing be scheduled no sooner than 10 days from the deadline for comments or objections by Class Members, but within 25 days of that deadline.

## VIII. PROPOSED DEADLINES FOR RETURN OF CLAIM FORMS AND DISTRIBUTION OF COMPENSATION.

Although these deadline can be finally decided at the time of Final Approval of the settlement, the parties, at this time, recommend the following time table for events that will occur after Final Approval of the settlement:

1. Thirty days after the Court's Order giving Final Approval of the settlement, Defendant will make payment of the Seven Hundred and Seventy-Five Thousand Dollars ($775,000). Payment will be made by transfer of this amount to Class Counsel's trust account.

2. Payment to Final Class Members will be made within 20 days of the receipt by Class Counsel of the payment of the Seven Hundred and Seventy Five Thousand Dollars ($775,000). Class Counsel, or its hired administrator, will make payment directly to the Named Plaintiffs and all Final Class Members out of Class Counsel's trust account. The checks will state on their face an expiration date after which they will become void if not cashed. The expiration date will be six months after the date they were mailed.

3.  Within 14 days of the disbursement of all proceeds, Class Counsel will provide an accounting to the Court and to counsel for the Defendant showing the names and addresses of all persons receiving compensation and the amount of that compensation, and certifying that all funds have been disbursed.

4.  1099 Forms will be sent in February of the year after the year in which checks are sent.

## IX. SUMMARY OF REQUESTED PROCEDURE AND TIMELINE.

For the Court's convenience, an outline of the requested procedure and deadlines is provided below. As cited throughout this Petition, this requested procedure and timeline comports with the recommendations of the Manual for Complex Litigation 3d (1995), Newberg on Class Actions, and applicable case law.

1.  The Court preliminarily approves the settlement, approves the form of the Proposed Settlement Notice, and schedules a final fairness hearing.

*Assuming the Settlement is given Preliminary Approval:*

2.  The Individually Mailed Notices are mailed to Class Members as described in section V above.

3.  Class Members are required to opt-out of the Class, to return the Claims Form attesting that they were strip searched thereby opting-in to the Class or to comment about or object to the settlement within 60 days after the settlement notices are mailed.

4.  After the 60-day deadline, the Parties jointly petition the Court for Final Approval of the settlement, informing the Court of the comments and objections, if any, that have been received.

5. The Court holds a Formal Fairness Hearing no sooner than 10 days after the 60-day deadline but no later than 25 days after the 60-day deadline. Class Members may appear at the hearing in support of or in opposition to the settlement.

*Assuming the Settlement is given Final Approval:*

6. Thirty days after the Court's Order giving Final Approval, Defendant will make payment of the $775,000.

7. Within 20 days of the payment by Defendant, checks are mailed to Final Class members. The checks state on their face an expiration date after which they will become void if not cashed. The expiration date will be 6 months after the date they were mailed.

8. Within 14 days of the day that checks are mailed, Class Counsel files with the Court and provides to Defendant an accounting of the names and addresses of all Class Members that received settlement proceeds and the amounts they received.

9. Six months after the checks were mailed, they become void and any unclaimed funds are returned to the Defendant.

10. In February of the year following the year in which checks were mailed, 1099 (tax) forms are sent to all persons who received and cashed checks.

## X. UNCLAIMED COMPENSATION.

In the event that any mailed checks are not cashed within six months of the date of mailing, or are returned as undeliverable and the intended recipient cannot be located, the total funds unclaimed will be returned to the Defendant.

## XI. CONCLUSION.

On the basis of the foregoing, the parties request that this Court grant preliminary approval of the Settlement Agreement, approve the form of the proposed settlement notice, adopt the deadlines set forth herein or similar deadlines, and schedule a final fairness hearing.

**JOINTLY SUBMITTED BY PLAINTIFFS AND DEFENDANT.**

Dated this 6th day of March, 2009.

                                ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                                By: /s/ Vincent J. Moccio
                                    Vincent J. Moccio (#184640)

                                2800 LaSalle Plaza
                                800 LaSalle Avenue
                                Minneapolis, MN 55402-2015
                                (612) 349-8500

                                *ATTORNEYS FOR PLAINTIFFS*

                                IVERSON REUVERS, LLC

                                By: /s/ Susan M. Tindal
                                    Jon K. Iverson (#146389)
                                    Susan M. Tindal (#330875)

                                9321 Ensign Avenue South
                                Bloomington, MN 55438
                                (952) 548-7200

                                *ATTORNEYS FOR DEFENDANT*